IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES ROBERT TURNER,

                OPINION and ORDER

        Plaintiff,

                13-cv-48-jdp[1]

    v.

MICHAEL RATACZAK,

        Defendant.

---

In this case brought under 42 U.S.C. § 1983, pro se prisoner James Turner is proceeding on a claim that defendant Michael Rataczak, a correctional officer at the Columbia Correctional Institution, used excessive force against him by slamming him against the wall and punching his face without provocation. Now before the court is defendant's motion for summary judgment, which the parties have completed briefing. After considering the parties' summary judgment materials, I conclude that there are disputed issues of material fact that must be resolved by a jury. In addition, I conclude that defendant is not entitled to qualified immunity. Accordingly, I will deny defendant's motion for summary judgment.

From the parties' proposed findings of fact and supporting evidence, I find that the following facts are material and undisputed unless indicated otherwise.

## UNDISPUTED FACTS

At all times relevant to this matter plaintiff James Turner was a prisoner in the custody of the Wisconsin Department of Corrections, incarcerated at the Columbia Correctional Institution (CCI), located in Portage, Wisconsin.

---

[1] This case was reassigned to me pursuant to a May 16, 2014 administrative order. Dkt. 19.

1

Defendant Michael Rataczak is a correctional officer at CCI. On August 26, 2012, defendant was escorting plaintiff back to his cell from the dayroom after the completion of a search of his cell during an institution lockdown. During lockdown, all inmates are escorted in wrist restraints and a staff member must have a "hands-on" escort for staff and inmate safety.

Once plaintiff and defendant reached the "A-lower landing," there was an altercation. The parties dispute precisely what happened. Defendant states that plaintiff "jerked" his arm, pulled away from defendant and threw his elbow up at him in an attempt to strike defendant in the head. (Plaintiff disputes this, although in his affidavit he suggests that he did move away from defendant because he "missed the last two stairs" and "tryed [sic] to grab the railing." Dkt. 44 at 2.) Defendant "performed a reactionary deflection" (I understand him to be saying that he blocked plaintiff's elbow from hitting his head). Defendant "directed" plaintiff to the wall and "'decentralized' [plaintiff] in between the stairs and the wall to gain control and compliance of [plaintiff's] behavior." (By this I understand defendant to be saying that he pushed plaintiff against the wall and then onto the floor.) Plaintiff states that defendant punched him in the face, breaking his eyeglasses. Defendant acknowledges that plaintiff's glasses were broken, but denies punching him.[2]

Officer Mario LaVia heard defendant yell "stop resisting" and looked over and saw plaintiff resisting defendant. LaVia, Officer Kevin Boodry and other officers responded to the

---

[2] In his response brief, plaintiff argues that he is "entitled to an inference" in his favor regarding the fact that defendant did not provide video footage of the incident or give plaintiff his eyeglasses for DNA testing. However, the court has already denied plaintiff's motion to compel discovery of these items, Dkt. 36, and plaintiff fails to show that defendant acted in bad faith in any way. *See Norman-Nunnery v. Madison Area Technical Coll.*, 625 F.3d 422, 428 (7th Cir. 2010). Additionally, the court fails to see any plausible way DNA analysis of plaintiff's broken eyeglasses could help his case; the parties agree that they were broken during the altercation with defendant.

scene and held plaintiff down while he was placed in leg restraints. Boodry saw that plaintiff's left eye "appeared to be reddening" and that he had a scrape on his left elbow. Plaintiff disputes this, stating that it was his right eye that was injured; he says his eye was swollen. Defendant ended up with a three-quarter-inch laceration on his right palm.

Plaintiff submitted a health services request dated August 27, 2012, claiming that he had a neck injury and headaches following the incident. Plaintiff stated, "I am in a lot of pain, I fell/was tackled down the stairs." Nurse Clinician Diane DeJager saw plaintiff for his complaints on August 29, 2012. DeJager found the right side of the neck had areas of tightness but no bruising or signs of deformities. When DeJager asked plaintiff to look up or turn his head right or left, he said that he could not because it hurt. The parties dispute whether plaintiff was "walking upright" after the examination and whether he was experiencing dizziness. DeJager assessed musculoskeletal pain and prescribed Ibuprofen for pain and rest with no activities or exercise. Plaintiff said that he was experiencing neck pain and requested a neck brace, but DeJager concluded that a brace was not medically necessary.

## OPINION

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). If the nonmoving party fails to establish the existence of an

3

essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

### A. Substantive Claim

Plaintiff was granted leave to proceed on an excessive force claim against defendant concerning an altercation that occurred on August 26, 2012, as defendant escorted plaintiff to his cell. Defendant has submitted proposed findings of fact providing his version of the altercation: he "decentralized" plaintiff after plaintiff "jerked" his arm, pulled away from defendant and threw his elbow up at him in an attempt to strike defendant in the head.

In his complaint, plaintiff alleged that he tripped going down the stairs and tried to catch himself on a railing, and defendant responded by slamming him against a door, punching him in the face, and then slamming him on the ground. Dkt. 9 at 3. However, plaintiff does not provide his own set of proposed findings of fact setting out this version of events. Instead, he submitted an affidavit setting forth this version, with *some* of this information included in his responses to defendant's proposed findings of fact, but much of it not included. Pursuant to this court's summary judgment procedures, copies of which were provided to plaintiff with the court's June 18, 2013 preliminary pretrial conference order, I will generally not consider statements in plaintiff's affidavit that are not included in his response to defendant's proposed findings of fact.[3] *Helpful Tips for Filing a Summary Judgment Motion*, #2 ("The court will not search the record for factual evidence. Even if there is evidence in the record to support your position on summary judgment, if you do not propose

---

[3] However, as seen in the "Undisputed Facts" section of this opinion, I will note where plaintiff's affidavit contradicts or clarifies his proposed findings, as there is no reason to credit proposed findings that do not accurately restate his affidavit testimony.

4

a finding of fact with the proper citation, the court will not consider that evidence when deciding the motion."); *Procedure to be Followed on Motions for Summary Judgment*, II.B.1. ("A responding party should file additional proposed findings of fact if it needs them to defeat the motion for summary judgment."), *see* Dkt. 16.

The test for determining whether a prisoner has suffered cruel and unusual punishment prohibited by the Eighth Amendment has both an objective and a subjective component. The objective component focuses on whether, in light of "contemporary standards of decency," the alleged deprivation was sufficiently serious. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component focuses on whether the officials acted with a sufficiently culpable state of mind. *Id.* In the excessive force context, these two components, "as a practical matter, collapse into a single inquiry because '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency' . . . 'always are violated.'" *Thomas v. Stalter*, 20 F.3d 298, 301 (7th Cir. 1994) (quoting *Hudson*, 503 U.S. at 9). Thus in determining whether an officer has used excessive force against a prisoner, the question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320 (1986). The factors relevant to making this determination include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Id.* at 321.

In his summary judgment brief, defendant argues that his actions to "decentralize" plaintiff do not constitute excessive force because it is undisputed that he *perceived* plaintiff's actions as a threat and that his actions to decentralize plaintiff were a "reasonable graduated approach to restore discipline." If it were undisputed that defendant thought plaintiff had threatened him and defendant's only response was to push him into the wall and onto the ground to neutralize the perceived threat, he would have a strong case for the granting of his summary judgment motion. *See Whitley v. Albers*, 475 U.S. at 319 ("The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."); *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012) ("Custodians must be able to handle, sometimes manhandle, their charges, if a building crammed with disgruntled people who disdain authority (that's how the prisoners came to be there, after all) is to be manageable.").

However, because of the difficulty of proving a party's subjective state of mind, cases involving motivation and intent are often inappropriate for summary judgment. *See Alexander v. Wis. Dep't of Health and Family Servs.*, 263 F.3d 673, 681 (7th Cir. 2001); *see also Sallie v. Thiel*, 23 F. App'x 586, 589 (7th Cir. 2001) (applying this proposition to prison excessive force case). This case provides a good example of this premise. Plaintiff, for obvious reasons, cannot *directly* dispute defendant's assertion about his state of mind. Although plaintiff seems to agree that he moved away from defendant, he does say that he did not "jerk" his arm or swing his elbow at defendant in an attempt to harm him and that he never tried to resist defendant. Given these facts, a reasonable jury could disbelieve defendant's version of the events and infer that defendant had no reason to perceive a threat or otherwise feel it was

6

necessary to push plaintiff into the wall and then onto the ground. Once that inference is made, the *Whitley* factors tend to point in favor of plaintiff, and summary judgment is inappropriate. *Hill v. Shelander*, 992 F.2d 714, 717 (7th Cir. 1993) ("If the fact-finder were to accept [plaintiff's] story, then [defendant] arguably acted without justification because there would have been no need for [defendant] to physically assault [plaintiff] in order to maintain or restore discipline in the cell.").

Moreover, plaintiff states that defendant punched him in the face. Even if jurors believed defendant's rationale for "decentralizing" plaintiff, they could infer that punching an inmate in wrist restraints is a far more severe response than reasonably required under the circumstances. And in any case, if they believed plaintiff's version of events, they could reasonably infer that defendant had no reason for taking such a severe action other than to cause harm to plaintiff.

Defendant seems to realize that punching an already restrained inmate seems inherently less justifiable than decentralizing him, because he does not argue that punching plaintiff, if true, would have been part of a "good faith effort to restore discipline." Rather, he argues that other undisputed facts are inconsistent with plaintiff's assertion that defendant punched him. For instance, plaintiff filed a health services request stating that he "fell/was tackled down the stairs" but failing to mention that he was punched. It is also undisputed that defendant suffered a laceration on the palm of his hand, which defendant characterizes as being inconsistent with an account in which he punched plaintiff with a closed fist. Finally, defendant argues that plaintiff's injuries were relatively minor and inconsistent with being punched in the face.

7

I do not agree that these facts are necessarily inconsistent with plaintiff's account of being punched. It is not difficult to think of reasons why plaintiff may have failed to mention the punch in his health services request; for instance, perhaps he did not feel the need to recount the entire episode in the request form if he thought that his more painful injuries were caused by being decentralized. Regarding defendant's injury, there is no reason to think that the laceration proves the absence of a punch because the alleged punch was not the only action taken by defendant in the altercation; he could have cut his hand at any time during the incident. With regard to plaintiff's injuries, the parties agree that there was "reddening" or swelling of one of his eyes, which could be consistent with being punched in the eye. In any case, even if these facts were more clearly inconsistent with plaintiff's story, such inconsistencies would only serve to raise questions of fact and credibility that are for the jury to address rather than this court on summary judgment.

Defendant also argues that he should prevail on summary judgment because plaintiff's injuries are relatively minor. Although defendant does not develop the argument particularly well, he cites to cases suggesting that minor or *de minimis* uses of force do not violate the Eighth Amendment, which leads me to believe that he is arguing that plaintiff's injuries show that the use of force was *de minimis*. *See, e.g., Hudson*, 503 U.S. at 9-10. ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'") (quoting *Whitley*, 475 U.S. at 327); *Outlaw v. Newkirk*, 259 F.3d 833, 840 (7th Cir. 2001) ("Even viewing the facts in a light most favorable to [plaintiff], a rational jury could draw one of only two possible conclusions: that the incident was an accident, or that [defendant] deliberately and perhaps unnecessarily

8

applied a relatively minor amount of force to achieve a legitimate security objective."); *Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994) ("Pouring a bucket of water over the head of a prisoner who is already standing ankle-deep in water, while it may be seen as unnecessary in retrospect, is a minor use of force that does not offend the conscience.").

Plaintiff's injuries (swollen eye, neck tightness, pain, and restricted range of motion, and a scrape on his elbow) were not massive but neither were they so minor that it is obvious the use of force by defendant was minimal. Moreover, defendant includes in his brief cases calling this *de minimis* standard into question and reiterating that there is not a "significant injury requirement." *Washington v. Hively*, 695 F.3d, 641, 642 (7th Cir. 2012); *Guitron*, 675 F.3d at 1046 (7th Cir. 2012). In particular, the court in *Guitron* stated:

> The reason the Court referred to *de minimis* force in *Hudson*—and the reason several opinions of this court have done so since—is not to revive a significant-injury requirement by other means, but to emphasize an important difference between constitutional law and private law. In tort law, any unconsented and offensive touching is a battery. An unwelcome tickle with a feather can lead to an award of damages. A judgment of imprisonment strips a prisoner of that right to be let alone, and many other interests as well. Custodians must be able to handle, sometimes manhandle, their charges, if a building crammed with disgruntled people who disdain authority (that's how the prisoners came to be there, after all) is to be manageable. When a physical injury occurs as the result of force applied in the course of prison operations, as happened to Guitron, the courts should approach the matter as *Whitley* and *Hudson v. McMillian* direct, rather than trying to classify injuries as *de minimis*.

675 F.3d at 1046 (citations omitted). As discussed above, applying the *Whitley* factors to the facts viewed in the light most favorable to plaintiff shows that summary judgment is inappropriate. According to plaintiff, defendant had *no* reason to apply any force because he was not resisting defendant, and defendant's use of force went beyond merely "decentralizing" plaintiff to punching him in the face. Based on these facts, a reasonable jury

9

could conclude that defendant maliciously and sadistically decentralized and punched plaintiff to cause him harm rather than to restore discipline.

### B. Qualified Immunity

In the alternative, defendant argues that he is entitled to qualified immunity on plaintiff's excessive force claim. Qualified immunity applies whenever a government official's actions, even if unconstitutional, did not violate the "clearly established law" at the time. *Pearson v. Callahan*, 555 U.S. 223, 822 (2009); *Vinning-El v. Evans*, 657 F.3d 591, 594 (7th Cir. 2011). However, "[t]he notion that unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment is not a new or unusual constitutional principle." *Hill v. Shelander*, 992 F.2d 714, 718 (7th Cir. 1993) (internal quotations and citations omitted). Because the defendant's intent weighs so heavily in the excessive force standard, if a jury concludes that a plaintiff has met that standard, a prison official cannot then claim that he reasonably believed his actions were lawful. *Id.* ("[I]f the finder of fact were to decide that [defendant] acted with malicious intent, there could be no question that a reasonable prison sergeant should reasonably have known that the conduct described by [plaintiff] violated the eighth amendment.") As explained above, based on the facts provided by the parties, a reasonable jury could conclude that defendant decentralized and punched plaintiff without having a legitimate security-based reason for doing so. Accordingly, defendant is not entitled to summary judgment based on qualified immunity grounds.

C.      Trial Date

Because of a scheduling conflict, the case cannot be tried the week of September 8, 2014 as originally scheduled. A status conference has been set for June 20, 2014, at which Magistrate Judge Stephen Crocker will set a new trial date after consulting with the parties.

**ORDER**

IT IS ORDERED that defendant Michael Rataczak's motion for summary judgment, Dkt. 22, is DENIED. The case will proceed to trial on a date set at the June 20, 2014 status conference before Magistrate Judge Stephen Crocker.

Entered this 18th day of June, 2014.

BY THE COURT:
/s/

JAMES D. PETERSON
District Judge